UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAFIQ Z. MONET,                              Case No. 20-12484

                        Plaintiff,            Sean F. Cox
v.                                            United States District Judge

COMMISSIONER OF SOCIAL                        Curtis Ivy, Jr.
SECURITY,                                     United States Magistrate Judge

                        Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 22)**

Plaintiff Shafiq Monet brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying his applications for Disability Insurance Benefits and

Supplemental Security Income under the Social Security Act.  This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 17), the Commissioner's cross-

motion for summary judgment (ECF No. 22), Plaintiff's reply (ECF No. 23) and

the administrative record (ECF No. 15).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's

motion for summary judgment (ECF No. 22), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff previously filed an application for disability benefits, alleging disability since May 29, 2012.  Plaintiff received an unfavorable decision on that application on November 12, 2015.  (ECF No. 15-3, PageID.159-70).

In the current application, Plaintiff alleges his disability began on May 29, 2015, at the age of 32.  (ECF No. 15-2, PageID.60).  He applied for disability insurance benefits and supplemental security income on October 17, 2018.  (*Id.*).  He meets the insured status requirements through June 30, 2016.  His disability report depicts several ailments which undermined his ability to work, including surgery on his lower back, sciatica, gait in left foot, knee issues in both knees, sleep apnea, chronic obstructive pulmonary disease, high blood pressure, high cholesterol, migraines, kidney disease, bladder issues, ADHD, depression, anxiety, and mood swings.  (ECF No. 15-6, PageID.292).  His application was denied on February 7, 2019.  (ECF No. 15-2, PageID.60).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  On September 3, 2019, ALJ Carol Guyton held a hearing, at which Plaintiff and a vocational expert ("VE"), Suman Srinivasan, testified.  (ECF No.

15-2, PageID.80-106).  On November 12, 2019, the ALJ issued an opinion which
determined that Plaintiff was not disabled within the meaning of the Social
Security Act.  Plaintiff later submitted a request for review of the hearing decision.
On August 3, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.*
at PageID.50-56).  Thus, the ALJ's decision became the Commissioner's final
decision.

Plaintiff timely commenced the instant action on September 10, 2020.

**B.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the
sequential evaluation process, the ALJ found that Plaintiff had not engaged in
substantial gainful activity since May 29, 2015, the alleged onset date.  (ECF No.
15-2, PageID.63).  At **Step 2**, the ALJ found that Plaintiff had the following severe
impairments: degenerative disc disease of the lumbar spine, status post
laminectomy; chronic obstructive pulmonary disease ("COPD"); obstructive sleep
apnea; osteoarthritis of the knees; obesity; depression with mood disorder; post-
traumatic stress disorder ("PTSD"); bipolar disorder; generalized anxiety
disorder; and history of alcoholism.  (*Id.*).  At **Step 3**, the ALJ found that Plaintiff
did not have an impairment or combination of impairments that met or medically
equaled the severity of one of the listed impairments.  (*Id.* at PageID.63-65).
**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except limited to standing for 4
> hours, walking for 1 hour, and sitting for 6 hours in an 8
> hour workday; never climbing ladders, ropes, or
> scaffolds; occasional exposure to fumes, odors, dust,
> gases, and respiratory irritants; occasional climbing
> ramps and stairs, and balancing, crawling, kneeling,
> stooping, and crouching; occasional pushing and pulling
> with the upper and lower extremities; work limited to
> simple, routine tasks involving no more than simple,
> short instructions and simple, work related decisions with
> few work place changes; and occasional contact with the
> public, coworkers, and supervisors.

(*Id.* at PageID.65-68).   At **Step 4**, the ALJ determined that Plaintiff has no past

relevant work.  (*Id.* at PageID.68).  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined there were existing jobs

in significant numbers within the national economy that Plaintiff could perform,

such as routing clerk, merchandise marker, and inspector hand packagers.  (*Id.* at

PageID.69).  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, from May 29, 2015 through the

date of the decision.  (*Id*).

## C.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

   D.    **Standard of Review**

   The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

---

   [2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would

6

have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.      Analysis

#### 1.      ALJ's Rejection of Opinion Evidence

In Plaintiff's first statement of error, he argues the ALJ impermissibly

substituted her own medical opinion in place of the medical opinions in the record

related to his physical impairments, having rejected all the medical opinions.

Plaintiff takes specific issue with the ALJ's RFC determination that Plaintiff can

stand for four hours, walk for one hour, and sit for six hours in an eight-hour

workday, where no physician so opined.  (ECF No. 17, PageID.1652-55).  The

Commissioner asserts the ALJ properly evaluated the opinion evidence and did not

err by "extract[ing] his RFC determination" from the two consultative assessments.

(ECF No. 22, PageID.1673-74).

As reflected above, Plaintiff's application for disability benefits is based on

both physical and mental impairments; the argument raised here relates to physical

impairments.  Neither party summarized the medical evidence and the ALJ gave a short synopsis and referenced the prior unfavorable administrative decision for background on Plaintiff's impairments.  (*See* ECF No. 15-2, PageID.66-67).  The undersigned deems an exhaustive recitation of Plaintiff's medical history is unnecessary for the arguments he raises on appeal.  By way of background, however, Plaintiff underwent back surgery in 2012.  The record contains a great number of treatment notes and imaging results, both related and unrelated to the conditions for which Plaintiff applied for disability benefits.  Specific findings are addressed below as necessary.

Plaintiff presented to State agency consultative examining physician Dr. Bina Shaw on January 10, 2019.  Physical examination revealed full range of motion in the cervical spine, hips, knees, ankles, and toes.  There was minimal crepitus in both knees, but no deformity was noted in the knee joints. Thoracolumbar spine flexion was 0-60, extension from 0-10, and rotation 0-20.  A chart appended to Dr. Shaw's opinion suggests these findings are in the normal range.  (ECF No. 15-12, PageID.1316).  Plaintiff had no sacroiliac joint tenderness, no midline spine tenderness, and no muscle spasms.  (*Id.* at PageID.1312).  Finally, Dr. Shaw noted Plaintiff had a normal gait and the clinical evidence did not support the need for a walking aid.  (*Id.* at PageiD.1315).  Based on the aforementioned, Dr. Shaw opined: "He should be able to engage in simple,

repetitious, noncognitive activities.  He can sit for 12 hours, stand 2 hours, and walk one hour at the most.  He should avoid frequent climbing, squatting and kneeling.  He can push and pull at least 20 pounds for a total of 8 hours a day." (*Id.* at PageID.1313).  The ALJ found this opinion "somewhat persuasive."  She found Dr. Shaw's "limits for standing are overstated" given a physical examination on June 13, 2018 showed normal lumbar spine, full range of motion and musculoskeletal strength, no swelling or deformities, and no spinal tenderness. (ECF No. 15-2, PageID.67) (citing ECF No. 15-15, PageID.1614).  This June 13, 2018 finding is not unique; other treatment records reveal normal objective findings as well.  (*See, e.g.*, ECF No. 15-15, PageID.1610, 1618, 1622).

Plaintiff's treating nurse practitioner submitted a "Medical Assessment of Ability to do Work Related Activities (Physical)" and a "Medical Questionnaire" during September 2018.  The nurse practitioner shared he had treated Plaintiff monthly for the last seven years and listed his diagnoses as chronic low back pain, bilateral degenerative joint disease of the knees, degenerative disc disease, and COPD.  (ECF No. 15-9, PageID.654, 658).  He opined Plaintiff could not sustain fulltime work, but the reasons listed are not completely legible.  (*Id.* at PageID.655).  In terms of Plaintiff's relevant abilities, the nurse practitioner opined Plaintiff could stand and walk 45 minutes to one hour and sit 40 minutes to one hour in a workday.  He also opined Plaintiff would be absent from work more than

four days per month and would require the use of a cane when standing and walking.  (*Id.* at PageID.659).  The ALJ found this opinion "unpersuasive."  (ECF No. 15-12, PageID.67).  She noted Plaintiff's physical examination on June 13, 2018, described above, indicates the reference to required cane usage and four days or more of monthly absences exaggerates the severity of Plaintiff's limitations.  (ECF No. 15-2, PageID.67).

State agency reviewing physician Dr. Thomas Flake provided an opinion at the initial level on January 23, 2019.[3]  Relevant to Plaintiff's argument, Dr. Flake concluded Plaintiff could stand and/or walk about six hours and sit for about six hours in an eight-hour workday.  (ECF No. 15-3, PageID.117).  Dr. Flake stated there was no new and material evidence since the prior unfavorable decision on November 17, 2015 to suggest the prior decision should be changed.  (*Id.* at PageID.118).  The ALJ found this opinion "unpersuasive" because Dr. Shaw's examination and opinion support additional standing and walking limitations.  (ECF No. 15-2, PageID.67).

In sum, the ALJ rejected or partially rejected the medical opinions about Plaintiff's ability to sit, stand, and walk during an eighth-hour workday.  That said, the ALJ crafted an RFC limiting Plaintiff to standing for four hours, walking for one hour, and sitting for six hours in a workday.  Plaintiff contends the ALJ

---

[3] Dr. Flake's reviewing opinion appears twice in the record, at Exhibits B1A and B2A.

erroneously relied on her own interpretation of medical evidence to reach this RFC conclusion.

The Sixth Circuit has "previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."  *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) and *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)).  In other words, the ALJ need not base her RFC determination on a specific medical opinion.

Even so, a number of courts agree that an "ALJ must generally obtain expert opinion when formulating the RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity."  *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017) (quotation marks omitted) (collecting cases).  The principal case in this line of authority is *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008).  There, the court held an ALJ's finding that a claimant was not disabled was not supported by substantial evidence because the ALJ analyzed the claimant's RFC with no supporting medical opinion evidence.  *Id.* at 912–13.  The claimant alleged "multiple impairments of her

spine." *Id.* at 910.  Although the claimant had an "extensive" and "well

documented" treatment history, none of her treating physicians provided a medical

opinion on her functional abilities.  *Id.*  The record contained only one medical

opinion, from the state examining physician.  Yet this opinion predated about two

years of medical records.  *Id.*  Nonetheless, the ALJ, instead of "ordering a

consultative examination or having a medical expert testify at the hearing,"

analyzed the two years of medical evidence himself and rendered a decision.  *Id.*

The issue stems from the fact that ALJs are not qualified to "interpret raw medical

data in functional terms."  *Id.* at 912 (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st

Cir. 1999)).

     *Deskin* may not apply, however, where an ALJ has opinion evidence that

accounts for the entire medical record, but still chooses not to rely on any of the

available medical opinions.  *Henderson v. Comm'r of Soc. Sec.*, 2010 WL 750222,

at *2 (N.D. Ohio Mar. 2, 2010).  As noted, the Sixth Circuit held an ALJ's RFC

determination may be supported by substantial evidence, even if no "physician

offers an opinion consistent with that of the ALJ."  *Mokbel-Aljahmi*, 732 F. App'x

at 401.  Indeed, the judge who authored *Deskin* clarified in a later opinion that the

*Deskin* rule was narrow and applied only "when an ALJ makes a finding . . . based

on no medical source opinion or an outdated source opinion that does not include

consideration of a critical body of objective evidence."  *Kizys v. Comm'r of Soc.*

*Sec.*, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011); *see also Raber v. Comm'r of Soc. Sec.*, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) ("Deskin potentially applies in only two circumstances: (1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence.").

This is not a case devoid of medical opinion evidence. The record contains opinions from a treating provider, a non-examining reviewing physician, and an examining consultative physician, and the ALJ did not wholly discredit all of them. Further, while there are some treatment records post-dating the opinion evidence, most of these records do not address the relevant physical impairments. (ECF No. 15-14, PageID.1518-1605). Where the relevant impairments are addressed, it is not in the form of "raw medical data" such as an MRI, and the information is not materially different from what was available to the physicians at the time of their opinions. For example, during June 2019, objective examination revealed "continued popping" of the right knee and bilateral knee pain with "extended ambulation," (*id.* at PageID.1582), and during April 2019 his right knee was warm and swollen but with no loss of motor or sensory functions in the lower extremities (*id.* at PageID.1558). Simply put, there is not a "critical body" of the "objective medical evidence" that is not accounted for by a medical opinion. Thus, the

narrow *Deskin* rule does not apply here. The fact that the ALJ's RFC determination is not entirely and directly supported by a medical opinion is not error.

The ALJ also created an accurate and logical bridge between the opinion evidence and the RFC. The ALJ found Dr. Flake's opinion not restrictive enough, the nurse practitioner's opinion too restrictive, and Dr. Shaw's somewhat in the middle. The ALJ's conclusion that Plaintiff could walk for one hour is directly supported by the nurse practitioner's and Dr. Shaw's opinions that Plaintiff could walk for no more than one hour. The ALJ concluded Plaintiff could stand for a total of four hours in a workday, while Dr. Flake said he could stand for six hours and Dr. Shaw said he could stand for only two. But as the ALJ explained, objective examination by Dr. Shaw and during June 2018 did not reveal Plaintiff was very limited in his functional abilities. Although not directly supported by a medical opinion, the undersigned cannot conclude the ALJ merely substituted her own medical opinion for that of medical doctors. Finally, in relation to sitting, the ALJ found Plaintiff more limited than Dr. Shaw, who opined Plaintiff could sit for twelve hours. Instead, the ALJ limited Plaintiff to sitting for six hours (as did Dr. Flake). Plaintiff's nurse practitioner would limit him to sitting for 40 minutes to one hour, but the ALJ's explanation, above, is sufficient to trace the path of her reasoning—the objective examinations do not reveal Plaintiff is so limited. In

short, the ALJ's decision is not entirely untethered from competent medical opinion evidence, and the ALJ did not engage in impressible interpretation of "raw medical data."

It is clear that the ALJ, and not a physician, is ultimately charged with determining a claimant's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)). "[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'. 719, 728 (6th Cir. 2013) (internal quotation marks and citation omitted). For the reasons just stated, the undersigned suggests the ALJ's decision be upheld.

In his opening brief, Plaintiff did not argue the ALJ's persuasiveness determinations were wrong or without substantial evidence in support. The Commissioner argued the ALJ followed the appropriate regulations in evaluating the opinion evidence, and thus there was no error. In his reply brief, Plaintiff stated, "the ALJ did not provide specific reasons for either rejecting all of the medical opinions of record, nor did she provide support for her contrary medical opinion." (ECF No. 23, PageID.1682). He did not further develop a challenge to

the ALJ's persuasiveness determinations.  Such cursory reference to an argument typically renders the argument waived.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

But even considering such an argument, the ALJ met the minimum standards required under the regulations.  ALJs must evaluate the "persuasiveness" of medical opinions by considering five factors: supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict a medical opinion."  § 416.920c(c)(1)-(5).  The "other factors" include the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  § 416.920c(c)(5).  The "most important factors" are the supportability and consistency of the opinion.  § 416.920c(b)(2).  The ALJ's comparison of the opinions to each other and to the other medical evidence addresses the consistency and supportability of the opinions.  For instance, Plaintiff's treating nurse practitioner opined Plaintiff required the use of a cane for ambulation, but Dr. Shaw expressly indicated Plaintiff did not need to use a cane.  The ALJ further pointed to normal objective examination findings of Plaintiff's back and lower

extremities which do not suggest Plaintiff is as limited as stated by his treating provider.  Nor did Plaintiff point to objective findings in the record that are consistent with any of the opinions that the ALJ should have considered.

2.    Absences from Work

Plaintiff's second and final charge on appeal is that the ALJ failed to adequately consider the number of absences from work Plaintiff would have for emergency medical care, medical testing, and medical appointments.  He points out that over the span of 18 months he presented to the hospital, for testing, or to an appointment 19 times.  The vocational expert testified no more than one absence per month would be tolerated.  Plaintiff asserts the evidence shows he would be absent more than once per month, and thus the decision at Step Five lacks substantial support.  (ECF No. 17, PageID.1655-56).  The Commissioner argues the ALJ considered Plaintiff's medical visits, but also articulated that several visits were for conditions unrelated to his alleged disabling conditions, such as pink eye, a headache, and a dental problem.  The Commissioner cites *McWhorter v. Berryhill*, 2018 WL 4417746 (E.D. Mich. July 23, 2018) and *Griffin v. Comm'r of Soc. Sec.*, 2017 WL 991006 (E.D. Mich. Mar. 15, 2017) in support of her position.  (ECF No. 22, PageID.1677-78).  Plaintiff did not revisit this issue in his reply brief.

In assessing a claimant's RFC, the ALJ must assess his ability to sustain work for eight hours a day, five days a week. "Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded." *Griffin*, 2017 WL 991006, at *2 (citing *Harrison v. Comm'r of Soc. Sec.*, 2016 WL 759379, at *6 (E.D. Mich. Feb 26, 2016)). The ALJ expressly addressed absenteeism in her RFC decision—she found unpersuasive Plaintiff's treating provider's opinion that he would need to miss four or more days of work per month as a result of impairments or treatment. The ALJ concluded this opinion exaggerated the severity of Plaintiff's limitations. And notably, Plaintiff argues his history of 19 hospital and doctor visits over 18 months would have precluded him from maintaining employment during that time, but he did not argue before the ALJ or this Court that he has ongoing treatment scheduled or requires recurring appointments that are only available during the workweek that would preclude gainful employment in the future. Nor did Plaintiff challenge that many of the hospital visits cited by Plaintiff related to conditions irrelevant to his disability application. For instance, on June 12, 2017, he presented to the hospital for an injury sustained while using a chainsaw. (ECF No. 15-8, PageID.482). On September 21, 2017, Plaintiff complained of generalized abdominal pain, nausea, diarrhea, and a dry cough. (ECF No. 15-7, PageID.426). During April 2018, he

presented with left ear lobe swelling.  (ECF No. 15-9, PageID.594).  Thus, the "sheer number" of hospital visits alone does not establish his claim for disability. *See McWhorter*, 2018 WL 4417746, at \*5.

### F.   Conclusion

Plaintiff has the burden of proof on his statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 22), and **AFFIRM** the Commissioner of Social Security's decision.

## II.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 13, 2022                       s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge